Kíenneth O. Johnson, Jr., J.
This is a proceeding upon a motion to dismiss. The defendant, Frank J. Turcsik, was tried before this court without a jury on the charge of criminally selling a dangerous drug in the third degree.
At the conclusion of the People’s case, the defendant moved for a dismissal of the charge for failure of proof. Decision was reserved, the defense then rested, and the evidence was closed.
The central question is whether People’s Exhibit 1, identified at the trial as heroin, was admissible in evidence as a substance received from the defendant. The defendant contends that the People’s failure to call as a witness a police officer who was among those in the chain of possession and control of the alleged heroin rendered the People’s case fatally defective.
*25 At the trial, evidence was presented to show that Trooper Mastronardi on November 6,1971 bought from the defendant two packets of a substance which the defendant represented to be heroin. Trooper Mastronardi enclosed the packets in a plastic box, scratched his initials on the box, and delivered the box to investigator McEIligott the same day.
Investigator McEIligott testified to receiving the box, placing his initials on it and giving it to Trooper Vredenburgh on November 12 for delivery to the State Police laboratory in Albany, New York. He also said Vredenburgh returned the box, this time inside a sealed plastic bag, later on the same day.
Chemist Marta Pat Hughes from the State Police laboratory testified to receiving the box from Trooper Vredenburgh. She tested the contents of one of the packets, found it to be heroin, and then, after initialling the packet she placed it (and apparently the other packet and box) in a plastic bag, sealed the bag and gave the bag to Trooper Vredenburgh.
At this point the plastic bag and its contents were admitted in evidence as Exhibit 1 “as the bag they [the police officers] got from defendant and she [Mrs. Hughes] testified it contained heroin”. Trooper Vredenburgh was not called as a witness, the District Attorney showing that he was involved in a dangerous drug investigation and his presence in court would involve jeopardizing his safety and the safety of others and exposing an investigation. It is this failure to call Trooper Vredenburgh as a witness that defendant contends is fatal to the People’s proof.
Before proceeding to the merits of defendant’s argument it is necessary to decide whether the defendant’s motion to dismiss is too late as contended by the District Attorney. The District Attorney argues that the defendant failed to enter a proper objection to admission of People’s Exhibit 1 and that by not so objecting he waived any right he might otherwise have had. The court has little difficulty with this argument. An extract from the trial record shows why. Immediately after People’s Exhibit 1 was received the following colloquy ensued:
“Mr. Sullivan: Is it received?
“ The Court: It has been received?
“ Mr. Sullivan: As a dangerous drug?
‘1 The Court: As the bag they got from defendant and she testified it contained heroin.
1 ‘ Mr. Sullivan: Pine.
“ Mr. LoPinto: I don’t want to be troublesome, but, where did she get it?
*26 “ The Court: From Officer Vredenburgh who got it from Officer McElligot who got it from Officer Mastronardi who got it from the defendant.
‘1 Mr. LoPinto: I want the record to show we do not concede that at this point.
‘ ‘ The Court: All right.
“ Mr. Sullivan: Exhibit 1 has been received?
‘ ‘ The Court: True. ’ ’
The cases cited by the District Attorney involved either no objection by defendant’s counsel at all or an objection so general as to be worthless. The same cannot be said of defense attorney’s objection here. He was plainly objecting to the introduction of People’s Exhibit 1, which had been identified as heroin, as having been “got” from the defendant. This is the crux of the case. The defense attorney clearly was not satisfied that the People had proved that People’s Exhibit 1 did come from the defendant and his later argument and this motion to dismiss elaborated on the basis of his original reservation or objection and this court reserved decision.
To establish their case, the People had the burden of proving that the substance purchased from the defendant by Trooper Mastronardi was the same in all important respects as the substance analyzed by chemist Hughes and found to be heroin. Where it is essential to show that a particular object is the same one taken from the defendant and the object has passed through the hands of various custodians since it allegedly came from the defendant a problem of identification may arise. When the question concerns a drug such as that involved here, heroin, the problem is analogous to those involving a blood or urine sample taken from a person suspected of operating an automobile while intoxicated. A leading case in this field is People v. Sansalone (208 Misc. 491). There a policeman carried a blood sample home and placed it in his refrigerator. Four or five people had access to the refrigerator. The next morning the policeman’s mother gave the blood sample to another policeman who came for it. The mother was not called as a witness. On appeal, the defendant’s conviction was reversed and a new trial ordered because there was no showing that the blood specimen taken home by the first policeman was the same one delivered to the second policeman. The court regarded the absence of testimony from the mother as a missing necessary link in the chain of identification. The court said (supra, p. 493) “it is essential to show the chain of possession of the blood sample and the unchanged condition of the container from the time it is taken *27 from a defendant until it is delivered to the chemist. ’ ’ The court added: “ Blood specimens to be used as evidence in trials such as this should be handled with the greatest of care and all persons who handle the specimen should be ready to identify it and testify to its custody and unchanged condition.”
The principles of the Scmsalone decision have been applied in numerous cases thereafter and they may be regarded as fairly reflecting the current New York law on the question. People v. Lesinski (10 Misc 2d 254) concerned a urine sample taken from a defendant and carried home in a bottle by the arresting officer. Upon arriving home, the officer placed the bottle under a dresser and delivered it the next morning to a police chemist for analysis. The officer’s wife, mother and father-in-law lived with the officer. Holding that evidence of unchanged condition and continuous chain of possession of the .sample were missing, the court reversed the defendant’s conviction and ordered a new trial, citing People v. Sansalone (supra) as authority.
The cited cases, as well as many others which need not be discussed in detail, illustrate the absolute necessity of a showing of continuous chain of possession and unchanged condition before the substance alleged here to be heroin can be properly admitted into evidence (see People v. Malone, 14 N Y 2d 8). Whatever this court might previously have indicated to the contrary, it is now compelled to hold that Trooper Vredenburgh is a necessary link in the chain of possession! of the alleged heroin from the defendant to the chemist and that without his testimony the People have failed in their proof. Trooper Mastronardi testified that, after buying two packets of a substance represented to be heroin, he placed them in a plastic box, scratched his initials on the box and gave it to Inspector McElligott. Six days later, Inspector McElligott, after placing his initials on the box, gave it to Trooper Vredenburgh for delivery to the police laboratory: Mrs. Hughes received the box from Trooper Vredenburgh, analyzed the contents of one of the packets and found it to be heroin, placed the evidence in a plastic bag and sealed it and gave it to Trooper Vredenburgh, an undercover agent who did not testify at the trial. There was, of course, no attempt at identification of the substance until it reached Mrs. Hughes. Under these circumstances it was clearly necessary that there be testimony from Trooper Vredenburgh to the effect that he received the identical box and contents from Inspector McElligott and delivered it intact to Mrs. Hughes. There can be no doubt that the substance received by Mrs. Hughes proved to be heroin, but of course this is not the same *28 as saying it came from the defendant. Without Vredenburgh’s testimony we have no evidence what he did with the packets and whether they were available to any one else during the course of his possession. The court is left to speculate whether he kept the packets safely on his person or perhaps might have left them in the car or placed them somewhere during the time he had them where they were available to others. In a similar case before this court which resulted in a conviction by jury trial (People v. Williams, June Term, County Court) Trooper Vredenburgh was also involved as a person who acted as a delivery agent. He did not testify in that case also because he was involved in a dangerous drug investigation as an undercover agent and his presence in court (particularly because of his stature and build which would be easily identifiable) would involve his safety and mig’ht result in exposing the investigation. However, in that case the testimony showed that Trooper Vredenburgh was only involved in the return of the exhibit from the State Police laboratory in Albany after the substance had been identified as marijuana by the chemist and there was no question that the substance analyzed at the laboratory was the same substance that was seized from the defendant. Trooper Vredenburgh in that case was not involved in the chain of possession of the substance going to the laboratory in Albany before analysis and everyone involved with possession up until the time after analysis as marijuana testified.
An additional cause for reasonable doubt as to the integrity of the chain of possession and unchanged condition of the evidence is found also in Inspector McElligott’s testimony. He was not asked, nor did he volunteer, what he did with the box and its contents from November 6 when he got it from Trooper Mastronardi and November 12 when he gave it to Trooper Vredenburgh. He was merely asked, “ Did there come a time when that box left your possession? ”. Again the court is thus left to speculate on whether the box was safely locked up or what other measures were taken to ensure that the alleged evidence was preserved intact. While this failure is not as serious as the failure to produce a necessary link in the chain of possession, it does introduce a further element of uncertainty in the proof of the People’s case.
Defense counsel by letter, in addition to the memorandum filed, raises the further contention that in accordance with CPL 320.20 (subd. 3, par. [d]) this court must render a verdict. Said section provides for the order of trial in a nonjury case and said paragraph (d) of subdivision 3 states that, when all the evidence *29 is in, “ The court must then consider the case and render a verdict Said paragraph which mandates a verdict at that stage of the nonjury trial is not applicable in the present case where the court has specifically reserved decision (at the request of the defendant). This said paragraph of GPL 320.20 should ■particularly not be applied in this case because ihe question reserved for decision by this court is a question regarding the evidence and whether it should he admitted or not. Until this question is answered there is no way of knowing whether all the evidence is in or not.
Motion to dismiss is granted.